IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>L. L. BEAN, INC.,<br><br>        Defendant. | C.A. No.  13-cv-00325 LPS<br><br><br><br>PUBLIC VERSION |

**ADOBE SYSTEM INCORPORATED'S REPLY BRIEF TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION OF ADOBE SYSTEM INCORPORATED'S MOTION TO INTERVENE**

Tara D. Elliott (#4483)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
(302) 652-5070
tde@fr.com

Jason W. Wolff
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
(858) 678-5070
wolff@fr.com

**Attorneys for Proposed Intervenor
Adobe Systems Incorporated**

Dated:  October 31, 2013

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF REPLY ................................................................................................1

II. CORRECTIONS TO PRINCETON'S STATEMENT OF FACTS ......................2

    A.    Adobe's License to the '056 Patent. ..........................................................2

    B.    Adobe Photoshop. .......................................................................................2

    C.    Adobe Scene7. ............................................................................................4

III. ARGUMENT ..........................................................................................................6

    A.    Adobe Has Established that It May Intervene as a Matter of Right. ..............................................................................................................6

    B.    Adobe Has Also Established Permissive Intervention. ..............................8

IV. CONCLUSION ......................................................................................................9

## TABLE OF AUTHORITIES

**Pages(s)**

**CASES**

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
   701 F.3d 938 (3d Cir. 2012)......................................................................................................6

*Harris v. Pernsley*,
   820 F.2d 592 (3d Cir. 1987)...................................................................................................7, 8

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995).........................................................................................................6

**OTHER AUTHORITIES**

FED. R. CIV. P. 24(a)(2)..............................................................................................................6, 9

Rule 24(b)(1)(B) ..............................................................................................................................9

**I.     SUMMARY OF REPLY**

Adobe moved to intervene in Princeton's case against L. L. Bean because *at least* one of the bases for Princeton's patent infringement allegations arises in whole or in part owing to L. L. Bean's use of licensed Adobe software.  While Princeton has narrowed its case from the sweeping allegations made in its complaint, the narrowed allegations still include functionality and features that L. L. Bean contends are performed by Adobe software.  Princeton's opposition is premised on whether Adobe or L. L. Bean have conclusively established that the sole manner in which image data was encoded in 2007 was using Adobe software, but this is misdirection.  It is misdirection because Adobe does not have to conclusively prove that Adobe software is the only software used by L. L. Bean in order to intervene.  Adobe alleged that its software was used, and L. L. Bean's declaration supporting this is unchallenged by any other evidence.

Notable in Princeton's opposition are the points of agreement with Adobe, including:

> "Princeton does not dispute that the License Agreement entered into by and between Adobe and Princeton is a valid license and covenant not to sue.  The License Agreement granted Adobe's customers and end users license to use the technology in the '056 Patent." Opp. at 1.

Princeton states that it "would accept Adobe's license information as conclusive proof of the issue of a defendant's ownership and licensure of any product." (Opp. at 5.)  This information has been provided to Princeton, and yet each time it is offered, Princeton moves the line and asks for more.[1]  Adobe should be permitted to intervene, and the license issues resolved *before* embarking on an expensive and comprehensive litigation over alleged infringement by L. L. Bean's website.

---

[1] Adobe recently located additional license information regarding L. L. Bean's use of Adobe products, which further corroborates the information that has already been provided to Princeton. It is attached to the Declaration of Jason W. Wolff ("Wolff Decl.") as Ex. 13.

II.     **CORRECTIONS TO PRINCETON'S STATEMENT OF FACTS**

Princeton recounts a largely irrelevant "he said, she said" sideshow, some of which is true and some of which is misleading diversion. Even Princeton's account shows that Princeton has little interest in a speedy resolution, and in fact, continues to pursue nuisance settlements during this indeterminate period of uncertainty that it knowingly created despite its acknowledgement of a valid and comprehensive license. By Princeton's own admissions, the infringement case involves a few JPEG files on L. L. Bean's website during a roughly 50-day period in 2007, so its opposition cannot be about the damages for L. L. Bean's alleged infringement, but rather the impact resolution here would have on its many other and future cases. Adobe addresses the issues believed relevant to its motion to intervene.

    A.     **Adobe's License to the '056 Patent.**

Adobe's rights and its customer's rights with regard to the '056 Patent are broad. (D.I. 15-2, Exhibit 2; Opp. at 8-10.) Princeton admits that the license is valid, that it extends to Adobe's customers, and that the "license retroactively covered Adobe and all users of Adobe's products." (Opp. at 1, 4 and 9-10.) The license extends to claims of infringement that arise in whole <u>or in part owing</u> to an Adobe product or service. (Opp. at 8-9.) The license is not limited to Adobe products or services that encode image data into JPEG files, products that are paid or free, products that are pre- or final releases, or products that are licensed from Adobe or not. Rather, it covers all Adobe products and services, for all times, including Adobe's technology used with other products, processes, components, or software. (Opp. at 4 and 9.)

    B.     **Adobe Photoshop.**

As Adobe mentioned in its opening brief, Adobe offers products capable of encoding image data into JPEG files. One example is Photoshop, which is offered as a standalone product, and is included in the Adobe Creative Suite (or "CS") product family. The L. L. Bean

2

declaration asserts that L. L. Bean used Photoshop to encode image data into JPEG files found on its website. (D.I. 15-2, Exhibit 4 at ¶ 7.) And L. L. Bean repeatedly licensed CS during the alleged infringement window, which is also evidence of use. (Wolff Decl. Ex. 13.)

Princeton admits that L. L. Bean has provided proof of the Photoshop licenses, but argues, among other things, that an undated, unsigned license agreement is insufficient, and the use may have been for a pre-release version of Adobe's software. (Opp. at 11-12.)

Photoshop and CS are available through many distribution channels including third-party retailers. Adobe does not require small volume licensees to sign and date license agreements, so it should be no surprise that there is no signed and dated agreement between Adobe and L. L. Bean regarding Photoshop (e.g. referred to as an "End User License Agreement" or "EULA", *see* Botts Decl. Exhibit G). Adobe's EULAs have standard terms, typically implemented as an on-screen click-wrap type of agreement. A screen shot of the manner in which the EULA is presented to the end user are shown below:[2]



---

[2] (*See* Wolff Decl. ¶ 3.)

Second, whether the Photoshop software used by L. L. Bean was a full version or a pre-release is irrelevant. (Opp. at 12.) Both are licensed. Notably, L. L. Bean provided Princeton with copies of the EULAs for CS2 and CS3, not just CS3 as is suggested in Princeton's opposition (*see* Opp. at 11-12). The CS2 license is missing from the Botts Decl. Exhibit C.[3] Princeton is correct that CS3 was finally released in April 2007. This begs the question of why Princeton chose to ignore the license information for CS2, the version prior to CS3, in its analysis. CS2 was released in 2005. (Wolff Decl. Ex. 14.) If anything, the CS2 and CS3 licenses that L. L. Bean provided to Princeton show that L. L. Bean continuously used Photoshop through the alleged infringement period, which is entirely consistent with the L. L. Bean declaration. (D.I. 15-2, Exhibit 4 at ¶ 7.) It is also consistent with Adobe's license data. (*See* Wolff Decl. Ex. 13.)

    C.    **Adobe Scene7.**

Princeton correctly shows that Scene7 acquired the assets of TrueSpectra in 2003. Among the technology acquired were "TrueSpectra's image server assets." (Botts Decl. at ¶ 7 and Exhibit F (first sentence).) Princeton points to the Botts Decl. Exhibit F, which states "Scene7 provides dynamic imaging software" that "dynamically generates unlimited image variations from a single master image to automatically populate Web sites." (Botts Decl. at ¶ 7 and Exhibit F (penultimate paragraph).) This matches up exactly with Princeton's infringement allegations in its complaint and opposition. (D.I. 1 ¶ 9; Opp. at 1, ¶ 2.)

Princeton correctly notes that L. L. Bean provided Princeton with a Scene7 license with L. L. Bean from 2004, which is *after* the TrueSpectra acquisition. (Opp. at 13; Wolff Decl. Ex.

---

[3] The CS2 EULA provided to Princeton by L. L. Bean can be found at Wolff Decl. Ex. 15.

16.) Thus, TrueSpectra was a Scene7 product by 2004.  Further, Princeton correctly notes that Adobe acquired Scene7 (the company) in 2007.  (Opp. at 13.)

Princeton claims that it requested but was denied a copy of the merger agreement between Adobe and Scene7.  (Opp. at 6 and 13.)  This is not true.  Adobe provided Princeton with the merger agreement and certificate of merger on August 27, 2013 (one week after the August 20 request), establishing that Scene7, the business and all of its technology, merged into Adobe.  (Opp. at 6; Wolff Decl. Ex. 17.)  Thus, what was Scene7's is now Adobe's, and the chain of products is from TrueSpectra, to Scene7, to Adobe.

As for the Scene7 related products themselves, the end user, here L. L. Bean, could use these products as long as the products still functioned for their intended purpose.  It is like buying a car:  you might buy a car in 2004 and if it still runs in 2007 there's no need to replace it even though there's a newer model.  Thus, it is irrelevant whether the 2004 TrueSpectra technology was sold in 2007, or that the L. L. Bean declaration identifies both Scene7 and TrueSpectra technology.  The license itself indicates Scene7 and TrueSpectra technology were licensed from *Scene7* in 2004.  In this regard, the 2003 TrueSpectra acquisition announcement cited by Princeton identifies a Scene7 product name as the *Infinite Imaging Platform*.  (Botts Decl. Exhibit F ("Scene7 provides dynamic imaging software through its *Infinite Imaging Platform*").)  The 2004 L. L. Bean license with Scene7, which was also provided to Princeton with L. L. Bean's July 24, 2013 letter, but was omitted from Princeton's exhibits, was for Scene7's *Infinite Imaging Platform* product, and further included additional products, including the "conversion of three *TrueSpectra* Image Server Licenses to Three *Scene7* Image Server licenses."  Wolff Decl. Ex. 16.  Princeton admits that the Scene7 technology could encode JPEG files based on this same document.  (Opp. at 4 ("an agreement between Adobe and L.L. Bean

from 2004 related to Scene7 JPEG encoding").) Thus, by Princeton's own admission and the terms of the Adobe license, L. L. Bean is licensed. (Opp. at 6 ("Counsel to Princeton told Ms. Lam that Princeton recognized that Scene7 users would undoubtedly be covered by the license with Adobe after Adobe purchased it.").)

### III. ARGUMENT

Princeton's arguments delay resolution and distract from the salient issues to be decided. Princeton simply refuses to accept that Adobe products, which include Photoshop, Scene7 and TrueSpectra, are implicated by its complaint. Princeton admits in its opposition that all three products were capable of encoding image data as JPEG files as alleged by Princeton in its complaint. And Princeton also admits that all three products, and many more, are licensed under the '056 Patent. Lastly, Princeton admits that Adobe's users, who used these products, including in the past, are licensed. Because Princeton knew or should have known its infringement allegations ensnared licensed Adobe products, it has breached its agreement with Adobe. Adobe is best situated to resolve the license issues and defend its end user's use of its products, and it can best do so as a party in Princeton's action against L. L. Bean.

### A. Adobe Has Established that It May Intervene as a Matter of Right.

Adobe is entitled to intervene in this action as a matter of right pursuant to Rule 24(a)(2). Intervention as of right is appropriate under Rule 24(a)(2) when: (1) the application is timely; (2) the applicant has a significant protectable interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation *See* FED. R. CIV. P. 24(a)(2); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). Although each requirement must be met, "a very strong showing that one of the

6

requirements is met may result in requiring a lesser showing of another requirement." *Harris v. Pernsley*, 820 F.2d 592, 596 n.6 (3d Cir. 1987). Princeton admits this is the correct test, then admits three of the four requirements are satisfied but is silent as to the fourth. (Opp. at 7-8.)

Princeton admits that Adobe's application is timely. (Opp. at 8 ("Princeton does not dispute that Adobe's Motion to Intervene is timely filed.").) Princeton admits that Adobe has a significant protectable interest in the litigation. (Opp. at 8 ("Princeton does not dispute that Adobe has a significant protectable interest in the litigation.").) Princeton admits that Adobe's interest may be affected or impaired by disposition of the action. *Id.* Princeton does not refute that Adobe's interest is not adequately represented by L. L. Bean. With three of four requirements admitted, and one unchallenged, Adobe has established that it may intervene as a matter of right.

With nothing left to dispute, Princeton challenges whether Adobe's interest is "direct" or "remote," which it morphs into a rambling discussion of whether Adobe has conclusively proved that L. L. Bean was a customer in 2007. Princeton admits that Adobe has a significant, protectable interest in the litigation, so how it can, in good faith, argue that Adobe's interest is remote is unclear. Princeton's application of this test is a mistake of law and fact. It is a mistake of law because Adobe does not have to conclusively prove that L. L. Bean used Adobe or Scene7 products. The unrebutted declaration of L. L. Bean (D.I. 15-2, Ex. 4) establishes this fact, the documentary evidence Adobe and L. L. Bean have provided establishes this fact (Wolff Decl. Exs. 13 and 15), and the allegation in Adobe's motion and complaint (D.I. 14 at 1, 3, 5 and D.I. 15-1 at ¶¶ 21-31) are each sufficient in their own right. The facts are also unrebutted by any

contrary *evidence* from Princeton.[4] But even if there is a question whether L. L. Bean was in fact a customer in 2007, and thus Adobe's interest is somehow remote, intervention as a matter of right has been established because all the other factors are admitted. Although each requirement must be met, "a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement." *Harris v. Pernsley*, 820 F.2d 592, 596 n.6 (3d Cir. 1987).

### B. Adobe Has Also Established Permissive Intervention.

Next, Princeton argues that Adobe should not be permitted to *permissively* intervene because it is somehow "unknown as to whether Adobe has common questions of law or fact in this proceeding." (Opp. at 8.) Princeton's challenge is frivolous. It is frivolous because on the same page Princeton admits that Adobe "has a significant protectable interest in the litigation." (Opp. at 8.) Princeton's only real objection is the same as above, which is whether Adobe has conclusively proved that all JPEG images on L. L. Bean's website were created using Adobe products. Again, this is not Adobe's burden here. Evidence of L. L. Bean's use of Adobe Products has been provided, and there is no evidence on the record that Adobe Products are not used. But even if all JPEG images on L. L. Bean's website were not created using Adobe products, and only some were, Adobe still has a significant protectable interest in the litigation as to the use of its products for encoding or providing the JPEG images that were provided with its products. Moreover, Adobe has a significant interest in Princeton's failure to investigate its infringement claims against Adobe's customers, and consequently its breach of contract with Adobe.

---

[4] Princeton refers to the L. L. Bean declaration as "unconvincing." (Opp. at 14.) Princeton twice sought extensions of time to prepare its opposition, but did not request the L. L. Bean declarant's deposition. Princeton has offered no evidence based rebuttal of the declaration.

IV.     **CONCLUSION**

For the foregoing reasons, Adobe respectfully requests that the Court grant its Motion to Intervene as a matter of right pursuant to Rule 24(a)(2), or alternatively, to intervene by permission pursuant to Rule 24(b)(1)(B).

> FISH & RICHARDSON P.C.
>
> By: */s/ Tara D. Elliott*
>     Tara D. Elliott (#4483)
>     222 Delaware Avenue, 17th Floor
>     P.O. Box 1114
>     Wilmington, DE 19899
>     (302) 652-5070
>     tde@fr.com
>
> Jason W. Wolff
> 12390 El Camino Real
> San Diego, CA 92130
> (858) 678-5070
> wolff@fr.com
>
> **Attorneys for Proposed Intervenor Adobe Systems Incorporated**

Dated: October 31, 2013

CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that on October 31, 2013, a true and correct copy of the within document filed UNDER SEAL was caused to be served by electronic mail on the following attorneys of record:

**VIA ELECTRONIC MAIL**

Sean T. O'Kelly
Daniel P. Murray
O'Kelly, Ernst, & Bielli, LLC
901 N. Market Street, Suite 1000
Wilmington , DE 19801
Email: Sokelly@oeblegal.Com
dmurray@oeblegal.com

Attorneys for Plaintiff
Princeton Digital Image Corporation

**VIA ELECTRONIC MAIL**

Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington , DE 19899
Email: Sbalick@ashby-Geddes.Com

Attorneys for Defendant
L.L. Bean Inc.

          */s/ Tara D. Elliott*
           Tara D. Elliott